IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

BRADFORD L. COLEY,                    *

    Plaintiff,                    *

vs.                                   *

                                 CASE NO. 4:10-CV-65 (CDL)

FORTSON-PEEK COMPANY, and PEEK *
PAVEMENT MARKING LLC,
                                *

    Defendants.

_____  *

## O R D E R

Plaintiff, Bradford Coley ("Coley"), does not like his job. His myriad of complaints range from the nitpicky to the serious. Unfortunately for him, this Court does not act as a personnel manager to resolve employee grievances. Instead, this Court must focus on whether his complaints give rise to legal causes of action that support judicially authorized relief. In this case, they do not, and for the reasons described in the remainder of this Order, Defendants' Motion for Summary Judgment (ECF No. 14) is granted.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment,

the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

BACKGROUND

Plaintiff, who is proceeding *pro se,* alleges that his employers, Defendants Fortson-Peek Company and Peek Pavement Marking, LLC (collectively "Defendants" or "Peek Pavement"), discriminated and retaliated against him, subjected him to a hostile work environment, and unlawfully received information about him. He seeks relief pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA").

Defendants have moved for summary judgment as to all of Plaintiff's claims. In accordance with Local Rule 56, Defendants filed a statement of undisputed material facts ("Defendants' SMF") in support of their motion. Defs.' Statement of Undisputed Material Facts in Supp. of Their Consolidated Mot. for Summ. J., ECF No. 14-2. The Court notified Coley of his right to respond to Defendants' Motion for

Summary Judgment and SMF.   Order, Mar. 9, 2011, ECF No. 18.
Coley did not respond to Defendants' SMF, as required by Local
Rule 56.   Thus, the facts contained in Defendants' SMF are
deemed admitted.   M.D. Ga. R. 56.   Although those facts are
admitted, the Court must still review the record citations in
Defendants' SMF to "determine if there is, indeed, no genuine
issue of material fact."   *Reese v. Herbert*, 527 F.3d 1253, 1269
(11th Cir. 2008) (internal quotation marks omitted).   Having
done so, the Court finds that no such genuine issues of material
fact exist to be tried.

Viewed in the light most favorable to Coley, the facts
surrounding his various complaints about his job are as follows.[1]
Coley, a black male, began working for Defendants on August 16,
2004.   Coley Dep. 20:21-23, ECF No. 17.   Defendants provide
marking services for roads, bridges and airports.   Defs.' Mot.
for Summ. J. Attach. 4, Rowell Aff. ¶ 3, ECF No. 14-4
[hereinafter 1st Rowell Aff.].   Coley currently works for
Defendants as an operator, a job that often requires him to
travel with a crew to remote job locations.   *Id.* ¶ 4.

Coley claims Defendants discriminated against him for the
first time in 2006 when Coley was involved in an incident with
superintendent Ray Morales ("Morales").   Morales called Coley a

---

[1] The Court understands that Defendants dispute many of these facts,
but at this stage of the litigation, the Court construes all facts in
Plaintiff's favor.

"lying piece of shit.  [Morales] told [Coley he] was nothing but a piece of dog shit.  [Coley] was fucking dog shit, and [he] was a lazy piece of dog shit and that's why nobody wanted [Coley] on their fucking crew."  Coley Dep. 36:23-37:2.  Morales charged at Coley with his hand in his right pocket and another employee pulled Morales away.  *Id.* at 37:3-4.

In April of 2007, Coley sustained injuries to his back and groin.  *Id.* at 48:8-10.  As a result of these injuries, Defendants placed Coley on light duty.  *Id.* at 50:16-20.  While on light duty, Coley picked up trash around Defendants' warehouse with "grabbers" that did not require him to bend down to the ground and pick up the trash with his hands.  *Id.* at 52:4-12.  Coley also cleaned the wash rack, swept the warehouse, sprayed the weeds, and picked up trash on Defendants' lot and training area.  *Id.* at 52:18-24.  Coley complained that his assignments did not comply with the light duty restrictions given by his doctor, and Defendants investigated and concluded that the assignments honored his doctor's restrictions.  Defs.' Mot. for Summ. J. Attach. 11, Letter from M. Hinson to B. Coley, June 25, 2007, ECF No. 14-11.

Coley filed a worker's compensation claim for his injuries.  Coley Dep. 48:12-49:16.  Coley's initial doctor's visits did not indicate whether Coley's groin injury was work related.  1st Rowell Aff. ¶ 5.  On June 14, 2007, someone from Peek Pavement

called Coley's doctor to inquire about what to look for on the jobsite if Coley had trouble with his condition.  Pl.'s Aff Ex. A1, Doctor's Notation, ECF No. 19 at 6 of 56.  Defendants received Coley's medical records pertaining to his worker's compensation claim.  *Id.*; Pl.'s Aff. Ex. A2, Summ. of Information from Dr. Sigman, ECF No. 19 at 7 of 56.

After returning to regular duty work, Coley again experienced groin pain on approximately May 27, 2007 and had to go to the hospital. Coley Dep. 57:16-22, 58:3-5.  Defendants then placed Coley on restricted duty and allowed him to work by riding along with his crew in the haul truck.  *Id.* at 59:9-12. Coley rode in the truck with Eddie Westbrook ("Westbrook"), who was on pain medication.  *Id.* at 62:6-10.  On the way to the jobsite, Westbrook almost hit another car because he was dozing off as a result of his medication.  *Id.* at 61:7-25.  Coley thought Defendants purposefully made him ride in the truck with Westbrook while Westbrook was on pain medication.  *Id.* at 63:21-64:2.

Coley complained to the owner of the company, Donnie Peek ("Peek"), about the incident with Westbrook.  *Id.* at 67:12-16. The Monday after Coley complained, Rick Thomas ("Thomas") told Coley that there was no work for him that week and he could go home.  *Id.* at 68:13-18.  Coley did not receive any official suspension or write up in his personnel file.  *Id.* at 68:24-

5

69:12.  Defendants hired four new employees that week, and one of the employees went out to work with Coley's supervisor, Ed Parker ("Parker").  *Id.* at 69:13-25.

After receiving treatment from a urologist for groin pain, as provided by the worker's compensation panel and Defendants' insurance provider, Coley's remaining groin condition was determined to be pre-existing and not work related.  Defs.' Mot. for Summ. J. Attach. 5, Second Rowell Aff. ¶ 5, ECF No. 14-5 [hereinafter 2d Rowell Aff.].  Coley contested this determination, and a hearing was scheduled on April 3, 2008 for his worker's compensation claim.  *Id.*  Coley requested leave to attend the hearing.  Defs.' Mot. for Summ. J. Attach. 14, Mem. to File from B. Culpepper, Apr. 7, 2008, ECF No. 14-14 [hereinafter Culpepper Mem.].  Coley could not travel to the remote worksite with his crew that week because of the hearing, so Thomas gave Coley a full week of leave.  *Id.*  The hearing, however, was rescheduled without prior notice to Defendants or Coley.  *Id.*; 2d Rowell Aff. ¶ 5.  Coley requested that Defendants' human resources manager, Brad Culpepper ("Culpepper"), file an unemployment benefits claim for the work he missed that week.  Culpepper Mem.  Culpepper could not process Coley's request because the company had work available and Coley's crew worked that week.  *Id.*

Also in 2008, Coley had a doctor's appointment in Columbus but was working at a remote a jobsite in Acworth, Georgia. Coley Dep. 76:15-24.  Thomas told Parker that if Coley wanted to go to his doctor's appointment, he would have to take a bus or a cab back to Columbus.  *Id.* at 77:24-78:3.  In the past, Defendants provided Coley with a vehicle to come back to Columbus for doctor's appointments.  *Id.* at 76:2-8.  Coley missed his appointment but was able to reschedule.  *Id.* at 80:22-81:6.  Coley had given Defendants notice of his doctor's appointment in advance.  *Id.* at 82:21-25.

Defendants sent Coley home on a Monday and a Tuesday in July of 2008 because Defendants said there was no work for him. *Id.* at 88:20-24, 89:19-90:9.  Coley's pay records indicate that he worked over forty hours every week in July 2008.  Defs.' Mot. for Summ. J. Attach. 16, Pay Records, ECF No. 14-16 at 19 of 30. After Defendants sent Coley home without work on Tuesday, he went to Congressman Sanford Bishop's office to complain about Defendants.  *Id.* at 88:20-89:4.  Coley spoke with Patricia Ashley ("Ashley") and "explained to her what [he] was going through" at work.  *Id.* at 89:2-4.  Coley complained to Bishop's office because "if there was no work for [him], why d[id] [Defendants] send somebody out in [his] place?"  *Id.* at 91:14-20.  Coley also "complained just about everything" while at

Bishop's office. *Id.* at 91:21-25. Ashley called Defendants and spoke to Culpepper. *Id.* at 89:4-5.

The Wednesday after Ashley spoke with Culpepper, Thomas told Coley to go out with a crew doing work which was "[e]xtremely heavy." *Id.* at 113:22-114:6. Donnie Kick ("Kick") originally assigned Coley to Billie Melton's ("Melton") crew, where his task would have been to put down cones or sit on the side of the road. *Id.* at 112:13-20, 113:9-12. Melton's crew already had enough men assigned to the crew to do the job before Coley received his assignment to the crew. *Id.* at 112:21-25. Thomas changed his assignment to Jeff Porter's ("Porter") crew, and Porter's crew was putting down tape on the road, which required almost constant lifting of heavy rolls of tape. *Id.* at 113:19-21, 115:1-8. Working with Melton's crew would have been less stressful on Coley's back. *Id.* at 115:1-3. Porter asked Coley, "[w]hat did you do to piss Rick off?" *Id.* at 114:13-16. Coley said that he had not done anything and asked Porter "[w]hy you keep asking me that?" *Id.* at 114:16-17. Porter responded "[b]ecause Rick told me to work the shit out of you." *Id.* at 114:17-18.

In 2009, Coley's coworker, Matt Simmons ("Simmons"), showed Coley a picture on his phone of a monkey and told Coley that he looked like the monkey. *Id.* at 100:5, 101:4-8. Simmons also asked Coley what he thought about the new President. *Id.* at

101:9-10.  Simmons told Coley that he probably voted for the President.  *Id.* at 101:11.

In September of 2010, after Coley and Parker both returned to work from doctor's appointments, Parker sent Coley over to the "wash rack" area.  *Id.* at 25:5-26:1, 27:3-7.  Coley then went into the "pit" to clean it out because the rest of the crew responsible for cleaning the pit had gone to lunch.  *Id.* at 26:19-27:7.  Later, Parker came to the pit and said that he "didn't tell [Coley] to get down there.  [He] just told [Coley] to go over there."  *Id.* at 27:8-10.

At some point during his employment with Defendants, Coley "asked to be superintendent, but nobody listened" to his request for a promotion.  *Id.* at 96:17-18.  Coley did not fill out an application because he did not know he was required to apply.  *Id.* at 96:19-21.  Defendants hired "a lot" of people for the superintendent position since Coley asked about the position.  *Id.* at 96:22-24.   When Coley asked Thomas about the position, Thomas told Coley he "really [thought] [Coley] need[ed] to step up."  *Id.* at 97:4-10.  According to Coley, Defendants "have a practice of hiring people without experience, [and] they get [to] learn—they get taught while they're there."  *Id.* at 97:15-17.  Coley looked in the employee handbook and it said Defendants posted information on a bulletin board for employees that wanted to apply for open positions.  *Id.* at 97:23-98:3.

9

Coley, however, worked there "for seven years and ain't seen that board yet." *Id.* at 98:3-4. Coley did not know where Defendants kept the board, "so there's no way of knowing what positions are available in order to advance up. Because if [there] was such a board, [Coley] would have attempted something." *Id.* at 98:5-7. Coley thought he met the qualifications for the superintendent position because "[a]nyone can learn." *Id.* at 98:8-13. When asked whether he had reviewed the job description for the superintendent position, Coley responded "[l]aying out." *Id.* at 98:14-16. Coley explained that he had "seen what a superintendent does, but [he] d[id not] see where it's so complicated that [he] [could not] learn it." *Id.* at 98:18-20.

Ultimately, Coley filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 27, 2008. Defs.' Mot. for Summ. J. Attach. 6, EEOC Charge of Discrimination, ECF No. 14-6. The EEOC issued Coley a Notice of Right to Sue letter on March 26, 2010. Defs.' Mot. for Summ. J. Attach. 8, Dismissal and Notice of Rights, ECF No. 14-8. Coley filed the presently pending action on June 21, 2010.

## DISCUSSION

Coley claims Defendants violated Title VII by subjecting him to "harassment, hostile work environment, intimidation, work place discrimination and retaliation." Compl. ¶ 4, ECF No. 1.

Coley also alleges that Defendants violated Title VII by discriminating and retaliating against him after he complained to Congressman Sanford Bishop and the NAACP. Compl. Attach. 1, Br. in Supp. 1-2, ECF No. 1-1. Finally, in support of his ADA claim, Coley alleges that he was born with a chromosome disease and Defendants discriminated against him by failing to honor his doctor's restrictions and by obtaining his medical records. *Id.* at 1.

Coley failed to file a responsive brief to Defendants' motion for summary judgment. Moreover, Coley's Complaint provides scant factual detail to support his allegations. Although Coley's deposition testimony provides a more detailed account of the factual allegations supporting his claims, a review of that testimony does not readily reveal the factual circumstances supporting each of Coley's claims. The Court acknowledges Coley's *pro se* status, but even *pro se* litigants do not have the privilege of simply filing a complaint and then having the Court figure it out for them. The Court is not required "to distill every potential argument that could be made based on the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 598 (11th Cir. 1995).

The Court is not likely required to engage in the following detailed analysis unassisted by the Plaintiff. Nevertheless,

the Court does so in an attempt to fully consider the claims asserted.   The Court begins its analysis by evaluating Defendants' argument that many of Coley's claims are time-barred.

**I.   Timeliness of Coley's Claims**

    <u>A.</u>   <u>Coley's Time-Barred Claims</u>

Defendants argue that several of Coley's claims are barred because he failed to file a timely charge of discrimination. In Georgia, a charge of discrimination under Title VII and the ADA must be filed within 180 days of the alleged unlawful employment action.   *See* 42 U.S.C. § 2000e-5(e)(1); *Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1258 (11th Cir. 2003); 42 U.S.C. § 12117(a) (applying remedies and procedures of Title VII, including 42 U.S.C. § 2000e-5, to the ADA).   Coley filed his EEOC Charge of Discrimination on October 27, 2008. Therefore, the following alleged unlawful acts that took place before April 30, 2008 are time-barred.

Any discriminatory discipline claim by Coley regarding the Morales incident in 2006 is untimely.   *See* Coley Dep. 21:23-22:3 (noting that the Morales incident occurred in 2006); *id.* at 38:18-24 (explaining that he thought Defendants responded to the Morales incident in a discriminatory manner because Morales was not terminated and "if [Coley] was in that position . . . [he] would have been terminated.").   Coley's claims that his work

assignments while on light duty during April and May of 2007 were discriminatory and retaliatory are time barred under Title VII and/or the ADA. *See* 1st Rowell Aff. ¶¶ 5-8; Coley Dep. 121:1-24 (claiming that Defendants treated Greg Stubbs, a white employee, more favorably in assigning him light duty after he was hit by a car and was on crutches); Charge of Discrimination (stating he was denied light duty since April 27, 2007); Pl.'s Aff. Ex. D5, D7, D9 & D11 (describing work assignments while he was on light duty between May 1, 2007 through May 7, 2007). Coley's ADA claim relating to Defendants' discussions with his doctor in June 2007 is also time-barred. *See* Pl.'s Aff. Ex. A1 & A2 (demonstrating communications between doctor and Defendants regarding Coley's injuries occurred in June 2007). Any discrimination claim by Coley arising out of the Westbrook driving incident in May 2007 is time barred, as are Coley's claims that he was denied work and denied pay in retaliation for complaining about riding with Westbrook. *See* Coley Dep. 60:6-16 (stating that driving incident occurred May 2007); *id.* at 65:10-66:1 (explaining that he was suspended after calling the owner the week of the driving incident); *id.* at 69:13-70:3 (stating that he was denied work in May 2007). Coley's allegation that Defendants discriminated against him by denying his unemployment benefits request from April 1, 2008 to April 5, 2008, because of the cancelled worker's compensation hearing, is similarly

barred.   *See* Charge of Discrimination (claiming Defendants denied him pay from April 1, 2008 to April 5, 3008); 2d Rowell Aff. ¶ 5 (noting the worker's compensation hearing was scheduled for April 3, 2008).

Although Defendants argue that any claim by Coley relating to Defendants' denial of transportation to his doctor's appointment is time-barred because the incident occurred in March 2008, 1st Rowell Aff. ¶ 10, Coley testified in his deposition that the incident occurred in June 2008, Coley Dep. 82:11-16.   Defendants submitted evidence that casts doubt on Coley's assertion that the incident occurred in June 2008.   *See* Defs.' Mot. for Summ. J. Attach. 13, Letter from W. Peek to B. Coley, June 6, 2008, ECF No. 14-13 (noting that on May 31, 2008 Coley sent Defendants a letter complaining of discrimination relating to the missed doctor's appointment).   It is still unclear from the record, however, when Defendants denied Coley transportation to his doctor's appointment.   Viewing the facts in the light most favorable to Coley, the Court finds a genuine fact dispute regarding whether the incident occurred in March or June of 2008.   Thus, at this stage of the litigation, Coley's discrimination claim relating to Defendants' denial of transportation to his doctor's appointment is not time-barred.

Coley apparently contends that the operative date for determining whether his claims are time-barred should be based

14

on his submission of information to the EEOC on June 12, 2007, as opposed to his submission of his formal EEOC charge. *See* Pl.'s Aff. ¶ 15, ECF No. 19 at 3 of 56. Coley submitted to the Court a letter he received from the EEOC to support his contention that he filed a "complaint" with the EEOC on June 12, 2007. Pl.'s Aff. Ex. K1, Letter from Atlanta District Office of the EEOC to B. Coley, June 15, 2007, ECF No. 19 at 53 of 56. The Court concludes that this letter does not create a question of fact as to whether Coley submitted a timely charge of discrimination. The letter from the EEOC clearly indicates that while Coley contacted the EEOC on June 12, 2007, he had not filled out an EEOC questionnaire or initiated the charge filing process with his letter. *See id.* (informing Coley that: (1) "[t]o begin the charge-filing process, [he needed to] read and complete the entire questionnaire immediately;" (2) he had to file a charge within 180 days of the date of the harm; and (3) "[g]enerally, submission of this questionnaire will not meet all requirements for filing a charge."). Accordingly, this letter does not alter the Court's conclusion that the claims mentioned above are barred for failure to file a timely charge of discrimination.

### B.   Coley's Premature Claims

Coley claims that in September of 2010, Parker sent him to work in the wash rack area and he had to clean the pit. Coley

Dep. 25:1-26:1, 27:3-7.  This incident occurred after the EEOC issued Coley his right to sue letter and after Coley filed this action.  Coley filed a subsequent charge of discrimination with the EEOC on February 18, 2011.  Defs.' Mot. for Summ. J. Attach. 23, Notice of Charge of Discrimination, ECF No. 14-23.  Coley has received no right to sue letter from the EEOC regarding that charge.  Accordingly, Coley's claims regarding Parker sending him to work in the wash rack area in September of 2010 are premature.  *See Forehand v. Fla. State Hosp.*, 89 F.3d 1562, 1567 (11th Cir. 1996) ("Before instituting a Title VII action in federal district court, a private plaintiff must file an EEOC complaint against the discriminating party and receive statutory notice from the EEOC of his or her right to sue the respondent named in the charge.").  The Court dismisses Coley's claims regarding this incident without prejudice.

The following claims are not time barred, and therefore, the Court evaluates them on the merits: (1) Defendants denial of transportation to Coley for his doctor's appointment, (2) Coley's allegation that Defendants denied him work on a Monday and Tuesday in July of 2008, (3) Coley's assignment to Porter's crew after Coley spoke with Sanford Bishop's office, (5) Coley's failure to promote claim, and (6) Coley's hostile work environment claim.  From the Court's review of Coley's Complaint and the record regarding these remaining claims, it appears

16

Coley asserts these claims under Title VII alone. *See* Compl. Attach. 1, Br. in Support 1-2, ECF No. 1-1 (claiming discrimination under ADA relating only to working restrictions and Defendants' discussion with his doctors and listing remaining incidents and retaliation as alleged violations of Title VII). Further, although Coley claims he suffers from a chromosome disease, there is no evidence in the record relating to Coley's timely claims that would support a contention that Defendants discriminated against Coley based on this condition. Thus, the Court undertakes its review of Coley's remaining claims under Title VII.

## II. Coley's Discrimination Claims

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). Where, as here, the plaintiff relies on circumstantial evidence to prove discrimination, the Court utilizes the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Anderson v. Embarq/Sprint,* 379 F. App'x 924, 928 (11th Cir. 2010) (per curiam). To establish a prima facie case, Coley must show that (1) he was a member of a protected class, (2) he was qualified for the job at issue, (3) he was subject to an adverse

employment action, and (4) his employer treated similarly situated employees outside of his protected class more favorably. *Id.* If Coley meets his burden of demonstrating a prima facie case, Defendants must articulate a legitimate, nondiscriminatory reason for the action. *Wilson v. Bellsouth Telecomms. Inc.,* 386 F. App'x 971, 972 (11th Cir. 2010) (per curiam). Once the defendant articulates a legitimate, nondiscriminatory reason, the plaintiff must then prove that the defendant's reason is pretext for unlawful discrimination. *Id.*

A. Defendants' Denial of Transportation

Coley claims that Defendants treated Parker, who is white, more favorably with regard to doctor's appointments. Coley Dep. 130:6-131:1. The Court finds that Defendants' denial of transportation to Coley for his doctor's appointment fails to meet the adverse employment action requirement of his prima facie case. "Although an adverse employment action need not be an ultimate employment decision, such as termination, failure to hire or demotion, it must meet a threshold level of substantiality." *Grimsley v. Marshalls of MA, Inc.*, 284 F. App'x 604, 608 (11th Cir. 2008) (per curiam) (internal quotation marks omitted). While "evidence of direct economic consequences is not always required, to prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a *serious and material* change in the terms,

18

conditions, or privileges of employment." *Id.* (emphasis in original) (internal quotation marks omitted). Defendants' denial of transportation, while perhaps inconvenient to Coley, falls well short of the requirement that Defendants' act seriously and materially change Coley's terms, conditions, or privileges of employment. Further, Coley admits that Defendants required Parker to miss appointments because of scheduling issues, Coley Dep. 131:5-13, and therefore the evidence demonstrates that Parker was not treated more favorably than Coley. Accordingly, Defendant is entitled to summary judgment on this claim.

> B.   Defendants' Denial of Work to Coley

Coley also claims that Defendants discriminated against him by denying him work on a Monday and Tuesday in July of 2008. Coley's pay records indicate that he worked over 40 hours every week in July. Further, Coley offered no evidence demonstrating that Defendants treated a similarly situated employee outside of his protected class more favorably than Defendants treated Coley when they sent him home without work. Although Coley claims in his deposition that Defendants sent someone to work in his place, *id.* at 91:14-20, the record fails to reveal any evidence regarding whether the individual was outside of Coley's protected class. Accordingly, Coley has not met his burden of

demonstrating a prima facie case of discrimination for this claim.

C.   Defendants' Failure to Promote

For Coley's failure to promote claim, he must show that: (1) he belonged to a protected class; (2) he was qualified for and applied for a position that the employer was seeking to fill; (3) despite qualifications, he was rejected; and (4) the position was filled with an individual outside the protected class. *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 768 (11th Cir. 2005). "However, where an employer does not formally announce a position, but rather uses informal and subjective procedures to identify a candidate, a plaintiff need not show under the second prong that he applied for the position—only that the employer had some reason to consider him for the post." *Id.*

Accepting Coley's factual assertions that Defendants did not formally post job openings and that they knew about his desire to become a superintendent, Coley still fails to establish that he met the qualifications of the position and that the position was filled by someone outside of his protected class.   Coley claims he met the qualifications of the superintendent position because "[a]nyone can learn," Coley Dep. 98:8-13, and he had "seen what a superintendent does, but [he] d[id not] see where it's so complicated that [he] [could not]

learn it," *id.* at 98:18-20.   Although Coley claims Defendants taught superintendents the job once they were hired, the Court finds Coley's bare assertions regarding his ability to learn insufficient to demonstrate that he met the objective qualifications for the position.   *See Vessels*, 408 F.3d at 769 (noting that to demonstrate that he was qualified for the position, the plaintiff must show that he satisfied the employer's objective qualifications).   Further, while Coley claims Defendants hired "a lot" of people to fill vacancies in the superintendent position after he asked about the job, Coley failed to show that the individuals hired by Defendants to fill the openings were outside of his race.   Accordingly, the record fails to reveal evidence sufficient to establish a prima facie failure to promote claim.

### III. Coley's Retaliation Claim

Coley's Complaint alleges that Defendants punished him for complaining to outside agencies, specifically Sanford Bishop's office and the NAACP.   Coley complained to Sanford Bishop's office that Defendants denied him work on the Monday and Tuesday in July of 2008.   Coley claims that Defendants retaliated by assigning him to a crew doing work that was more stressful on his back the day after he complained to Sanford Bishop's office. "To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) [h]e engaged in a statutorily

protected expression; (2) [h]e suffered an adverse employment
action; and (3) there is a causal connection between the two
events." *Gray v. Vestavia Hills Bd. of Educ.,* 317 F. App'x 898,
904 (11th Cir. 2008).  For Coley's complaint to Sanford Bishop's
office to constitute a statutorily protected activity, he must
demonstrate that "[h]e had a good faith, reasonable belief that
the employer was engaged in unlawful employment practices."  *Id.*
(internal quotation marks omitted).  He "must show not only that
[h]e subjectively believed [h]e was being discriminated against,
but also that [his] belief was *objectively* reasonable in light
of the facts and record presented."  *Id.* (internal quotation
marks omitted).  As explained above, Coley failed to present any
evidence showing that a similarly situated employee outside of
Coley's protected class was treated more favorably when
Defendants sent Coley home from work.  Therefore, based on the
lack of facts in the record, the Court cannot conclude that
Coley had an objectively reasonable belief that Defendants
engaged in an unlawful employment practice.  Thus, Coley's claim
that Defendants' retaliated against him by assigning him to a
crew doing more difficult work fails because he cannot show he
engaged in a statutorily protected activity by complaining.

**IV.  Coley's Hostile Work Environment Claim**

To establish a prima facie case for a hostile work
environment claim, Coley must demonstrate that: (1) he belongs

to a protected group; (2) he has been subject to unwelcome harassment; (3) the harassment was based on a protected characteristic, such as race; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatory abusive working environment; and (5) a basis for holding the employer liable. *Freeman v. City of Riverdale*, 330 F. App'x 863, 865 (11th Cir. 2009) (per curiam). When evaluating whether the harassment is sufficiently severe or pervasive, the Court looks at the totality of the circumstances and considers "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id.*

The only two incidents supporting Coley's hostile work environment claim are the 2006 Morales incident and Simmons's comments in 2009. *See id.* at 866 (noting that a plaintiff cannot establish a hostile work environment claim based on "discrete acts that were required to be challenged separately."). Although the Morales incident could be considered physically threatening because Morales charged at Coley, nothing in the record indicates that this harassment was based on Coley's race. Simmons's comments that Coley looked

like a monkey and likely voted for the President, although offensive utterances, constitute a single isolated occurrence. The Court finds that these two incidents, occurring approximately three years apart, are "too sporadic and isolated to establish discrimination so objectively severe and pervasive as to alter the terms and conditions of [Coley's] employment." *Id.* Accordingly, Coley has failed to establish a prima facie hostile work environment claim.

CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (ECF No. 14) is granted as to all of Coley's claims except his claims related to the incident in September of 2010. For the reasons previously explained, the September 2010 claims are dismissed without prejudice.


IT IS SO ORDERED, this 14th day of October, 2011.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE